UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IGOR SHAKHNIS, on behalf of himself
and others similarly situated,

              CASE NO.: 15-20909-CIV-KING

  Plaintiff,

v.

WORLDWIDE TRANSPORTATION
SERVICES, INC., a Florida Profit Corporation,
and ALI MALEK, individually.

  Defendants.
_____/

**PLAINTIFF'S MOTION FOR CERTIFICATION OF THIS COLLECTIVE ACTION AND INCORPORATED MEMORANDUM OF LAW**

  Plaintiff, IGOR SHAKHNIS ("Plaintiff"), requests the entry of an Order for Conditional Certification of this Collective Action and permitting under court supervision, notice to all similarly situated drivers who were classified as "independent contractors" or "independent operators ("I/Os")" by the Defendants, WORLD WIDE TRANSPORTATION SERVICES, INC., and ALI MALEK (collectively "Defendants") between March 5, 2012, to the present. These drivers, who were subjected to Defendants' alleged misclassification and corresponding failure to pay overtime compensation for all hours worked in excess of forty (40) in a workweek, are entitled to join this action to collect the wages that are owed to them.  Because the Defendants have been sued for this exact violation three (3) times in the last two (2) years, and yet continue to misclassify their drivers, this renewed action is necessary and Plaintiff requests conditional certification in this matter and states as follows:.

1

1. Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA") provides, among other things, that an action to recover unpaid minimum wages or unpaid overtime compensation may be maintained against any employer in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. See 29 U.S.C. § 216(b).

2. As stated in Plaintiff's Amended Complaint, Plaintiff was a driver for Defendants, who is authorized by the FLSA to sue in his own name on behalf of himself and other employees similarly situated. Plaintiff has brought this action on behalf of all current and former similarly situated drivers who worked for Defendants and were erroneously classified by Defendants as independent contractors and/or independent operators ("I/Os"). As a result of Defendants' uniform misclassification, these drivers allege that they were denied full and proper payment of "time and a half" wages for the overtime hours that they worked.

3. Plaintiff knows that this claim is typical of the claims of other former and current similarly situated "independent operator" drivers for Defendants, and typical of the claims of all members of the representative class described below. *See* Declaration of Igor Shakhnis at ¶14, attached as Exhibit 1.

4. The representative class consists of all current and former "independent contractors" or "independent operators" who worked for Defendants as a driver at any time within the last three (3) years, and who were denied time and one half their regular rate of pay for all hours worked over forty (40) in one or more workweeks for Defendants because of Defendants' alleged misclassification.

5. The named Plaintiff, as well as seven (7) "opt-in Plaintiffs" to date filed Declarations in support of this Motion. *See* Declaration of Vladislav Rajovic, attached as Exhibit

2

2; Declaration of Alexander Uruymgov, attached as Exhibit 3; Declaration of Sixto Pavicich, attached as Exhibit 4; Declaration of Jorge Romero, attached as Exhibit 5; Declaration of Jorge Contreras, attached as Exhibit 6; Declaration of Rodolfo Calvagna, attached as Exhibit 7; and Declaration of Tony Hoepelman, attached as Exhibit 8. Further, Plaintiff anticipates filing additional consent forms for other "similarly situated" employees who likewise wish to join this lawsuit, as Plaintiff is regularly approached by current drivers of Defendants who wish to join this case, but are scared because of anticipated retribution by Defendants.

6. As stated above, Defendants have been sued on at least three (3) prior occasions in the Southern District of Florida over the last two (2) years on the exact issue that is being raised in this matter- Defendants' illegal misclassification of these drivers as independent contractors.

7. Simply put, Defendants' drivers have the right to participate in this lawsuit and collect the wages owed to them. Plaintiffs allege that Defendants have uniformly misclassified their drivers, thereby making the identical relief appropriate with respect to their current and former drivers as a whole. Moreover, the common questions of law and fact predominate over any questions affecting only Plaintiff, and a collective action is superior to other available methods for the fair and equitable adjudication of the controversies between the representatives described above and the named Defendants. Although the class of current and former drivers is identified and certain of comprising at least 100 potential members during the relevant limitations period, the individual members of the class cannot be completely identified and notified of their right to join this action absent access to Defendants' books and records. Further, what makes this case particularly proper for certification, is the fact that Defendants cannot

disputed that they uniformly classify their drivers as independent contactors during the relevant limitations period, without doing any individual analysis of each drivers' particular work duties.

WHEREFORE, Plaintiff, IGOR SHAKHNIS, respectfully requests that the Court certify this matter as a collective action and permit and supervise notice to all current and former drivers misclassified as independent contractors, who did not receive full and proper payment of their wages for all overtime hours worked during his/her employment with Defendants.

## MEMORANDUM OF LAW

### I. INTRODUCTION

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. *See* 29 U.S.C. § 216(b).  The FLSA provides, in part, that:

> An action to recover the liability [for unpaid minimum wages and/or unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other similarly situated. ***No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

*See id.* (emphasis added).

Defendants operate a high-end transportation company.  Defendants have a fleet of vehicles that Plaintiff and those similarly situated would drive in order to provide transportation services to Defendants' clients.  *See* Exhibit 1 at ¶¶4,14.

Plaintiff, and all other drivers similarly situated, were uniformly labeled as independent contractors by Defendants when they drove for Defendants.  *See id.* at ¶7.  Notwithstanding the fact that Plaintiff and Defendants' other drivers worked in excess of forty (40) hours per week, Defendants did not pay *any* overtime compensation to its drivers. *See id*. at ¶12. Instead, Defendants paid Plaintiff, and those similarly situated individuals, according to the same pay

4

schedule no matter how many hours that they worked. *See id.* at ¶14. Defendants failed to pay such overtime compensation because they concluded that Plaintiffs were "independent contractors." *See id.* However, Defendants controlled all aspects of the work done by Plaintiff and those similarly situated. *See id.* at ¶¶8-11. Given the realities of the relationship between the Parties, Plaintiffs should have been classified as employees. *See id.* Thus, as a result of the misclassification, Plaintiff and other similarly drivers did not receive full and proper compensation for the overtime hours that they worked for Defendants. *See id.* ; *see also* Exhibits 2-8.

Defendants' failure to provide proper overtime compensation violates the FLSA's overtime provisions requiring the payment of time and one half overtime compensation for each hour worked over forty (40) in a workweek. Because Defendants uniformly misclassified their drivers as independent contractors, Plaintiff maintains that such misclassification has adversely affected the rights of each potential member of this collective action. *See Ayers v. SGS Control Servs., Inc.,* 2004 WL 2978296 at *1 (S.D.N.Y. 2004). *See also Scholtisek v. Eldre Corp.,* 229 F.R.D. 381, 390 (W.D.N.Y. 2005)("[w]hat is important is that these employees were allegedly subject to a common practice or scheme on [their employer's] part"). Therefore, Plaintiff seeks this Court's certification of this matter as a collective action and authorization to facilitate notice to each of Defendants' independent contractor and/or I/O drivers who were subjected to the misclassification and subsequent illegal pay practices described above at any time within the last three (3) years.

Plaintiff further requests that he be permitted to give such notice as approved by this Court to all such class members of their rights to opt-in to this litigation by executing an appropriate consent as required by Section 216(b) of the FLSA. Plaintiff's Declaration, and the

5

Declarations of the seven (7) additional "Opt-In Plaintiffs" who have joined this action since the time it was filed, and the three (3) Complaints previously filed in identical actions to this one, attest that Defendants' other drivers were uniformly misclassified, paid in the same manner, and were subjected to Defendants' illegal pay practices described above.

## II.     APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

FLSA collective actions operate much differently than the typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id.* This is just the exact opposite of traditional Rule 23 class actions in which a plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

### A.     This Court Has the Authority to Certify this Matter as a Collective Action and Permit Court Authorized Notice.

While normally potential plaintiffs cannot be sought, this prohibition does not apply in the collective context. In fact, in *Hoffman- La Roche, Inc. v. Sealing*, 110 S. Ct. 482 (1989), the United State Supreme Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential plaintiffs. *See id.*   There, the Court addressed the issue of whether the district court may play any role on prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought. *See id.*  The Court determined that district courts have discretion in appropriate cases to

implement 29 U.S.C. §216(b), by facilitating notice to potential plaintiffs. *See id* at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See id.*

Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute. Thus, it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time. *See id.* Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. *See id*. at 487. Additionally, the benefits of the collective action provisions of 29 U.S.C. §216(b), "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id.* at 486.

The question of notification in a FLSA class action arose again in *Dybach v. State of Florida, Department of Corrections*, 942 F .2d 1562 (11th Cir. 1991), where the Eleventh Circuit found that an adult probation officer was non-exempt and therefore entitled to overtime compensation for all hours worked over forty (40) in multiple workweeks. *See id.* The Eleventh Circuit also held that the district court had authority to issue an order requiring notice to "similarly situated" employees of the defendant affording them the opportunity to "opt-in." *Id.*

The Eleventh Circuit utilizes a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. § 216(b). *See Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F .3d 1208, 1219 (11th Cir. 2001) (stating that the two-tiered approach "appears to be an effective tool for district courts in this circuit adopt it in future cases."). Under this two-tiered approach, the court makes an initial determination, based solely upon the pleadings and any affidavits, whether notice of the action should be given to potential class members. *See id.* at 1218. Because the court has

minimal evidence at this stage of the proceedings, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. *See id.* Thereafter, a second, more rigorous factual determination is made as to whether the potential opt-in plaintiffs are similarly situated. *See id.*

      **B.**    **The Court's Focus Should be on the Existence of Defendants' Common Scheme or Plan in Determining Whether to Grant Notice.**

In determining whether to grant notice of a collective action, courts focus on whether plaintiffs were victims of a common scheme or plan that violated the law. *See Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1346-51 (N.D. Ga. 2002) (granting certification where "Plaintiffs have made substantial allegations, supported by evidence, that Defendant failed to comply with the FLSA by failing to pay overtime compensation to non-exempt employees on a class-wide basis."). Plaintiffs need not conclusively demonstrate that he and the other putative class members are, in fact, similarly situated. Rather, they must show that they "and potential Plaintiffs together were victims of a common scheme or plan that violated the law." *Rubery v. Buth-na-Bodhaige, Inc.*, 569 F.Supp.2nd 334 (W.D.N.Y). But, here, Plaintiff and the other opt-in Plaintiffs conclusively establish that they are, in fact, similarly situated and entitled to notice.

In determining whether to grant a Motion for Class Notice, typically, courts do not require a high number of opt-in plaintiffs to have already joined the case. *See Ackley v. City of Fort Lauderdale*, Case No.: 0-:07-cv-60960, at Doc. 45(S.D. Fla. Jan., 24, 2008)(granting Motion for Class Notice with plaintiffs and two (2) opt-in plaintiffs); *See e.g., Dietrich v. Liberty Square,* 230 F.R.D. 574, 579 (N.D. Iowa 2005)(two (2) affidavits provide sufficient factual basis for similarly situated inquiry); *See also Beck v. Desoto Health and Rehab,* case No.: 2:06-CV-226-FTM-34DNF, at Docs. 23, 34 (M.D. Fla. Jan. 24, 2007)(granting Class Notice Motion with only one (1) opt-in); *see also Titre v. Platinum Partners, LLC et al* Case Number: 0:08-cv-61254

at Doc. 42 (S.D. Fla. Oct. 16, 2008)(granting Class Notice with eleven (11) Opt-ins); *Larry Guerra v. Big Johnson Concrete Pumping, Inc.,* CASE NO.: 05-14237 (S.D. Fla. May 17, 2006)(granting Class Notice Motion where there was only one (1) Opt-in plaintiffs); *Reyes v. Carnival Corp.,* 2005 WL 4891058 (S.D. Fla. 2005) (named plaintiffs' affidavit, in combination with the two opt-in plaintiffs' notices of consent to join and affidavits sufficient to grant conditional certification of an FLSA collective action); *see also, Reese, supra* (affidavit of one named plaintiffs and three opt-in plaintiffs, coupled with one prior lawsuit against the same defendants for the same overtime violations, sufficient for conditional certification of an FLSA collective action); *see also*, *Ballaris*, 2001 WL 1335809, at *2 (allegations in complaint and two affidavits sufficient); *see also Zhao v. Benihana*, 2001 WL 84500, at *2 (S.D.N.Y. May 7, 2001) (one affidavit based on plaintiff's "best knowledge" sufficient);  *see also Realite v. Ark Restaurants Corp.*, 7 F.Supp.2d 303, 307 (S.D.N.Y. 1998) (allegations in complaint and plaintiffs' affidavits sufficient); *see also Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442-45 (N.D. Ill. 1982) (allegations in complaint sufficient); *see also Sanders v. MPRI, Inc.*, 2008 WL 5572846 (W.D.Okla.2008) (pleadings and plaintiff's affidavit sufficient); *see also Wajcman v. Hartman & Tyner, Inc.*, 2008 WL 203579 (S.D.Fla. 2008) (allegations in Complaint and affidavits of 3 opt-ins sufficient); *Gayle v. U.S.*, 85 Fed.Cl. 72 (Fed.Cl. 2008) (allegations in complaint and affidavit of named plaintiffs sufficient).

To date, seven (7) drivers have already joined this action prior to Court notice being facilitated. *See* [D.E. #17], [D.E. #18], [D.E. #19], [D.E. #21], [D.E. #22], [D.E. #23], [D.E. #24]. Furthermore, the Plaintiffs and other Declarations filed in support of this issue have already indicated that others are interested in joining. *See* Exhibit 1 at ¶16; Exhibit 2 at ¶10; Exhibit 3 at ¶¶9,10; Exhibit 4 at ¶10; Exhibit 5 at ¶11; Exhibit 6 at ¶¶14,15; Exhibit 7 at ¶8.  Defendants

employed up to 100 drivers in the South Florida area at any given time so the putative class is significant. *See* Exhibit 1 at ¶11 and Exhibits 2-8. Clearly, Plaintiffs have more than satisfied their burden to show that there is an interest and need for this collective action.

### C. The Court Should Certify This Certify this Matter as a Collective Action and Permit Court Authorized Notice.

There are questions of law and fact common to all of Defendants' drivers who are owed wages in this matter. For purposes of defining the "similarly situated class" pursuant to 29 U.S.C. § 216(b), Plaintiff need only demonstrate that the defined class is comprised of representatives who are similarly situated to Plaintiff with regard to Defendants' payroll practices. *See* 29 U.S.C. § 216(b); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991). There is no requirement of "strict symmetry" or "absolute identity"; rather potential class members must meet only a "sufficiently similar" standard. *Glass v. IDS Financial Services, Inc.,* 778 F. Supp. 1029, 1081 (D. Minn. 1991) (an allegation that a single decision, policy or plan precipitated the challenged action was sufficient to define the class).

While the FLSA does not define how similar the workers must be before they can pursue a collective action, factors for consideration whether plaintiffs: (1) all held the same job title; (2) worked in the same geographical location; (3) allege violations during the same time period; (4) were subjected to the same policies and practices; and (5) allege similar violations. *See Dybach,* 942 F.2d. at 1567. Indeed, Plaintiff's claims are typical of the claims of the other drivers at the company that were denied the overtime pay that they are entitled to. The failure to pay Plaintiffs all stems from Defendants' uniform misclassification of its drivers, despite the "economic realities" of the relationship. For example, all drivers had to begin their service with Defendants with a training course. *See* Exhibit 1 at ¶ ; Furthermore, drivers, who always drove vehicles that were owned by Defendants, were all required to follow policies and procedures that Defendants

laid out for them during their tenure. *See* Exhibit 1 at ¶8; Exhibit 2 at ¶8; Exhibit 3 at ¶8; Exhibit 4 at ¶8; Exhibit 5 at ¶8; Exhibit 6 at ¶8; Exhibit 7 at ¶8; Exhibit 8 at ¶8. And, when or if Plaintiffs failed and/or refused to follow the policies, they were punished with either a suspension, or termination of services. *See* Exhibits 1-8, at ¶8.

Defendants utilized between 50 and 100 independent operator or independent contractor drivers to provide transportation services at any given time. During the last three (3) years, none of the drivers that were classified in this manner were paid *any* overtime wages. *See* Exhibits 1-8 at ¶12. Plaintiff alleges that Defendants misclassified him and the other drivers and in doing so denied them overtime. *See id.*

Plaintiff and the opt-in Plaintiffs have provided specific facts to support their beliefs that other employees are interested in opting in; this is further supported by the fact that they all have pursued this action prior to any court notice of same being issued. Therefore, between the Declarations filed in support of this Motion and Defendants' uniform and undisputed misclassification of all of its drivers as independent contractors, Plaintiff and the opt-ins have more than met the burden at this stage to demonstrate that Defendants' misclassification and corresponding failure to pay is identical among all those who would be included in the class thus permitting the Court to certify this action as a collective.

### D.   A Collective Action is Necessary in This Case.

Allowing class notification to a potential class helps avoid multiple lawsuits where numerous employees have allegedly been harmed by the same violation. *See Hoffman- La Roche, Inc. v. Sealing*, 110 S. Ct. 482, 487 (1989); *Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003). In this case, this factor weighs heavily in favor of certification because multiple lawsuits have already occurred against the *same* company and for the exact *same* issues.

Notifying drivers of their rights could avoid more suits moving forward and efficiently litigate this matter in one action, and in one forum. Given that the Courts of the Southern District of Florida have already had to deal with no less than three (3) prior lawsuits in this matter with other Plaintiffs, it seems that notions of judicial economy would strongly support certification of this matter so as to avoid additional lawsuits. To the extent the potential 100 or more putative class members filed individual suits on this very issue, judicial resources will be wasted, and the risk of inconsistent decisions becomes prejudicial to both sides.

Based upon the Amended Complaint allegations and the above-referenced Declarations, Plaintiff has satisfied the applicable burden of persuasion that a colorable basis exists for determining that others similarly situated to Plaintiff exist. Further, seven (7) additional similarly situated employees learned of this action prior to any Court notice being issued, and have since opted-in to this claim. In addition, the Plaintiff stated that others may join within the near future. *See* Exhibit 1 at ¶16. This further demonstrates that others desire to join, if given notice of this matter.

Here, a collective action is sought as the Plaintiff alleges that Defendants have misclassified and refused to pay overtime on grounds generally applicable to the class (Defendants' current and former independent contractor or independent operator drivers), thereby making appropriate the same relief with respect to the class as a whole. Additionally, questions of law or fact common to all employees who worked for Defendants predominate over any questions affecting only individual members. Thus, a collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

### E. Factual Inquiries are Irrelevant for Stage I Certification and Defendants' Misclassification is Ripe for Certification.

While Defendants may try to argue that Plaintiffs are not similarly situated and this matter cannot proceed on a collective basis because the issue is "misclassification," the courts are replete with examples where certification has been granted in cases involving misclassification as an independent contractor. *See Carrera v. UPS Supply Chain Solutions, Inc.* 2011 WL 1303151 (S.D. Fla. 2011)(certifying a nationwide class of couriers that had been classified as "independent contractors"); *Clincy v. Galardi South Enterprises, Inc.*, 2010 WL 966639(N.D.Ga. 2010)(certifying a class of 'adult entertainers' who had been classified as "independent contractors" by the club at which they performed); *Davis v. Mostyn Law Firm, P.C.*, 2012 WL 163941 (S.D. Tex. 2012)(certifying a class of paralegals who had been classified as "independent contractors" at their law firm); *Lang v. DirecTV, Inc.*, 2011 WL 6934607 (E.D. La. 2011(certifying a class of DirecTV technicians that had been classified as "independent contractors"); *Scovil v. FedEx Ground Package System, Inc.*, 2011 WL 4347017(D.Me. 2011)(certifying a class of FedEx home delivery drivers that had been classified as "independent contractors"); *Guifi Li v. A Perfect Franchise, Inc.*, 2011 WL 4635198(N.D. Cal. 2011)(certifying a class of massage therapists that had been classified as "independent contractors").

#### 1. The "Merits" of Plaintiffs' Claims Are Not Considered When Determining Whether to Grant Notice.

Plaintiffs further anticipate Defendants will argue notice should not proceed based upon the only possible defense it may have to this action - that Plaintiffs and their co-employees are somehow exempt from the overtime requirements of the Fair Labor Standards Act or have no claim. Although Plaintiffs believe these defenses will ultimately fail based upon the facts that

will emerge during discovery, such arguments regarding the factual nature of Plaintiffs' claims and Defendant's defenses thereto are *irrelevant* at this stage of the notification process. At this "conditional certification" stage, courts *do not weigh the merits* of the underlying claims in determining whether potential opt-in Plaintiffs may be "similarly situated." *See Kreher v. City of Atlanta,* 2006 WL 739572, at *4 (N.D. Ga. Mar. 20, 2006) (*citing Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of [the conditional certification] inquiry is not whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are "similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated) and *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003) ("Once the plaintiffs makes a colorable claim for relief, the <u>only</u> inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named Plaintiffs . . ..").

In *Kreher*, the court concluded that too high a burden would be placed on the plaintiffs at the preliminary notice stage if they were required to submit evidence of a highly particularized nature, as the defendant suggested. *See id.* at 2006 WL 7398272, at * 4.  As such, the *Kreher* court concluded that although the plaintiffs' declarations lacked some details, they established the existence of other employees employed in similar positions and subject to similar policies, warranting the court's decision to grant the plaintiffs' motion under the "fairly lenient standard" applied in the Eleventh Circuit.  *Id.* at *4; *see also Leuthold v. Destination America,* 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class."); *Mooney*, 54 F.3d at 1214 (Recognizing that at the second stage of the *Lusardi* approach, or the opt-in or merits stage, with

more information, the court can then make a factual determination on the similarly situated question, and decide whether to allow the representative action to proceed to trial or to decertify the class and dismiss, without prejudice, the opt-in plaintiffs); *Goldman v. Radioshack Corp.*, No. Civ.A. 2:03-CV-032, 2003 WL 21250571, at *8 (E.D.Pa. Apr. 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant."); *Felix De Asencio v. Tyson Foods, Inc.,* 130 F.Supp.2d 660, 663 (E.D. Pa. 2001) ("While this information [submitted by Defendant] may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question."). Thus, setting Defendant's anticipated factual/legal arguments aside for purposes of Plaintiffs' Stage I Motion, Plaintiffs clearly have met their burden of proof on the "similarly situated" prong under *Hipp*.

### 2. **There is No Need for Discovery During Stage I Certification.**

To the extent that Defendants seek discovery before certification, it has been consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination. *See Lloredo v. Radioshack Corp.,* 2005 WL 1156030, at *1 (S.D. Fla. May 12, 2005) (refusing to examine discovery in making its first stage similarly situated determination); *see also Harrison v. Enterprise Rent-A-Car Co.,* 1998 U.S. Dist. LEXIS 13131, at *13 (July 1, 1998) (holding that the fact that subsequent discovery may prove the original plaintiffs and the opt-in plaintiffs are not after all "similarly situated" does not defeat conditional class certification); *Schwed v. Gen. Elec. Co.,* 159 F.R.D 373, 375 (N.D.N.Y. 1995) ("Even where later discovery proves the putative class members to be dissimilarly situated, notice . . . prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]").

An examination of discovery is not appropriate because at this stage the Court is not making a *factual determination* regarding whether the putative class members are "similarly situated". *See Pendelbury v. Starbucks Coffee Co.,* 2005 WL 84500 at *3(S.D.Fla. 2005)(stating that a factual determination of the similarly situated question is not appropriate when deciding conditional certification because of the early stages of the litigation); *Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment setting, as well as various defenses available to the defendant which appear to be individual to each plaintiffs, during the 'second stage' analysis after the close of discovery.").

Moreover, discovery is not necessary because courts at this stage do not resolve factual disputes or make credibility determinations. *See Scott v. Heartland Home Finance,* 2006 WL 1209813, at *3 (N. D. Ga. May 3, 2006) (*citing Severtson v. Phillips Beverage Co.,* 141 F.R.D 276, 279 (D. Minn. 1992)); *Camper v. Home Quality Mgmt., Inc.,* 200 F.R.D. 516, 520 (D. Md. 2000) ("Factual disputes do not negate the appropriateness of court facilitated notice.").  In *Scott,* the court held that it was not appropriate for the court to address the merits of plaintiffs' claims or weigh evidence and thus refused to consider the Defendant's arguments regarding the variation in specific job duties, locations, working hours, or the availability of various exemptions. *Scott,* 2006 WL 1209813, at *3; (*citing Pendelbury*, 2005 WL 84500, at *3 (factual matters regarding the applicability of exemptions to employees not appropriate at notice stage); *Moss v. Crawford & Co.,* 201 F.R.D. 398, 410 (W.D. Pa. 2000) ("[V]ariations in the Plaintiffs' duties, job locations and hourly billing rates do not differentiate the collective class to the extent that it defeats the primary objectives of a section 216(b) action.").

Through the allegations in the Amended Complaint and the Declarations submitted to this Court, Plaintiffs have provided sufficient evidence to warrant notice of this lawsuit be sent to all other drivers for Defendant that were classified as "independent contractors" or "independent operators." Because the "similarly situated" determination at the notice stage is preliminary, Defendants will not be prejudiced by the facilitation of notice because they can later argue that Plaintiffs and the putative class members are not in fact "similarly situated" enough to proceed collectively to trial. Accordingly, Plaintiffs' Stage I Motion should be granted at this time.

## III. RELIEF SOUGHT

Plaintiff seeks an Order requiring: (1) Defendants to produce to Plaintiff a list of all similarly situated employees who worked for Defendants and who were denied weekly wages from March 3, 2012, to the present within thirty (30) days, (2) the proposed "Notification" letter attached as Exhibit 9, be sent by Plaintiff's counsel to all similarly situated drivers; and (3) those who wish to join to complete sign and file with the Court the proposed "Notice of Consent to Join" form attached as Exhibit 10, within sixty (60) days of receipt of the list of all similarly situated employees from Defendants. Plaintiff seeks these time frames in order to ensure that all those who may be entitled to join this action receive notice and can make an educated decision as to whether to join. To the extent that any of the putative class members have relocated, a sixty day notice period will give Plaintiffs sufficient time for everyone to be located to allow participation in accordance with the remedial purposes of the FLSA and the many decisions that have allowed same. *See Oliver v. Aegis Communications Group, Inc.*, 2008 WL 7483891 (N.D.Tex. 2008)(90 day notice period); *see also Goudie v. Cable Communications, Inc.*, 2008 WL 4628394 (D.Or. 2008)(90 day notice period); *see also Adams v. Inter-Con Sec. Systems, Inc.*, 242 F.R.D. 530 (N.D.Cal. 2007)(Setting 90-day deadline for potential plaintiffs to file

17

consents to join FLSA collective action, because 30-day deadline suggested by employer was too short in light of number of potential plaintiffs); *see also Lima v. International Catastrophe Solutions, Inc*., 493 F.Supp.2d 793 (E.D.La. 2007)(90-day deadline, discussing need for longer deadline where the Plaintiffs are disbursed); *see also Fernandes da Silva v. M2/Royal Const. of Louisiana, LLC*, 2009 WL 3565949 (E.D.La. 2009)(90-day deadline appropriate); *see also Pedigo v. 3003 South Lamar*, 666 F.Supp.2d 693 (W.D.Tex. 2009)(60 day notice period); *see also Albanil v. Coast 2 Coast, Inc*., 2008 WL 4937565 (S.D.Tex. 2008)(60 day notice period); *see also Mims v. Carrier Corp*., 2008 WL 906335 (E.D.Tex. 2008)(60 day notice period); *Bernal v. Vankar Enterprises, Inc*., 2008 WL 791963 (W.D.Tex. 2008)(60 day notice period).

Plaintiff also seeks to have the proposed notice posted in Defendants' facilities and garage, to further notify other drivers of their right to participate in this action. Numerous district courts have approved notice by first class mail in combination with posting at the workplace. *See, e.g., Love v. Phillips Oil, Inc.,* 2008 WL 5157677, at *2 (N.D.Fla. 2008); *see also Romero v. Produce Dairy Foods, Inc.,* 235 F.R.D. 474, 493 (E.D.Cal. 2006); *see also Johnson v. American Airlines, Inc*., 531 F.Supp. 957, 961 (N.D.Tex. 1982)(reasoning that posting of notice would be only a small burden and the combination of mailing and posting notices would lead to the "best notice practicable."); *see also Soler v. G & U, Inc.,* 86 F.R.D. 524, 531 (S.D.N.Y. 1980); *see also Frank v. Capital Cities Communications, Inc.,* 88 F.R.D. 674, 679 (S.D.N.Y. 1981); *see also Veliz v. Cintas Corp.,* 2004 WL 2623909, at *2 (N.D.Cal. 2004) (requiring employer to post notice and consent forms in all of its work sites).

Furthermore, while Plaintiff does not want to delay this matter as he is anxious for his day in court, Plaintiff requests that any time frames set out in the Court's prior Orders be adjusted to allow for this matter to proceed as a collective action.

## CONCLUSION

Plaintiff has met his burden to allow this Court to conditionally certify this matter as a collective action and to facilitate notice to potential class members under Eleventh Circuit precedent. Accordingly, Plaintiff respectfully requests that this Court permit and supervise notice to all current and former drivers whom Defendants misclassified as independent contractors and/or independent operators, and who did not receive full and proper overtime wages for all hours worked for Defendants.

## CERTIFICATE OF GOOD FAITH CONFERRAL

Plaintiff's counsel has conferred with Defendants' counsel pursuant to Local Rule 7.1 in an effort to ascertain their position as to the relief sought. Defendants have indicated that they object to this matter being certified as a collective action.

Respectfully submitted this 26th day of May 2015.

                                          **s/ RICHARD CELLER**
                                          Richard Celler
                                          Florida Bar No.: 0173370
                                          Trial Counsel for Plaintiff
                                          RICHARD CELLER LEGAL, P.A.
                                          7450 Griffin Road, Suite 230
                                          Davie, FL 33314
                                          Telephone: (866) 344-9243
                                          Facsimile: (954) 337-2771
                                          E-mail: richard@floridaovertimelawyer.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of May 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of electronic filing to all Counsel of Record.

**s/ RICHARD CELLER**
Richard Celler, Esquire.